IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVNIA

| EDWARD H. SATERSTAD, | : | Civil No.: 4:13-CV-00847 |
|---|---|---|
| | : | |
| Petitioner, | : | |
| v. | : | (Judge Brann) |
| | : | |
| TREVOR WINGARD, | : | |
| | : | |
| Respondent | : | (Magistrate Judge Schwab) |

**MEMORANDUM**

March 7, 2016

Before the Court for disposition is Petitioner Edward H. Saterstad's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, this petition is denied and dismissed.

## I.  BACKGROUND/ PROCEDURAL HISTORY

On September 11, 2003, a Dauphin County jury convicted Petitioner, Edward H. Saterstad, hereinafter "Petitioner," of attempted luring of a child into a motor vehicle, attempted kidnapping, and stalking. [1] Judge Richard A. Lewis sentenced Petitioner to a total term of imprisonment of two to ten years. [2] At trial, Petitioner

---

[1] Report and Recommendation 27
[2] Id.

1

was represented by Joshua Lock, Esquire.[3] Following trial, Petitioner was

represented by Courtney Kishel, Esquire, who filed a post-sentence motion which

Judge Lewis subsequently denied.[4] The Superior Court of Pennsylvania affirmed

Petitioner's judgment of sentence and the Supreme Court of Pennsylvania denied

Petitioner's petition for allowance of appeal.[5]

Saterstad then filed a "Motion to Correct Factual Errors in the Sexual

Offenders Assessment Board Assessment" (PCRA I). Judge Lewis denied PCRA I

"without the appointment of counsel, on the ground that the court no longer had

jurisdiction to correct the report." [6] While the appeal of PCRA I was pending,

Petitioner filed a *pro se* "Petition for Post-Conviction Collateral Relief and Request

for Discovery" (PCRA II).[7] Judge Lewis appointed Jeffrey Engle, Esquire to

represent Petitioner, but subsequently allowed Attorney Engle to withdraw based

on his assertions that the PCRA II was untimely and that the grounds therein

lacked merit.[8]

The Superior Court of Pennsylvania consolidated Petitioner's PCRA I and

PCRA II.[9] The Superior Court reversed the order denying the PCRA I petition

---

[3] Id.
[4] Id.
[5] Id. at 28
[6] Id. at 28-29
[7] Id. at 29
[8] Id.
[9] Id. at 30

because counsel was not appointed for Petitioner.[10] With regard to PCRA II, the

Superior Court determined that Judge Lewis improperly permitted Attorney Engle

to withdraw without appointing other counsel due to Attorney Engle's erroneous

conclusion that the petition was untimely and his failure to independently review

the record to determine whether any meritorious issues existed.[11]

Petitioner subsequently retained Norris E. Gelman, Esquire, to represent him.[12]

The Superior Court reversed and remanded the two PCRA petitions to allow

Attorney Gelman to file an amended PCRA petition.[13] More than a year later,

Petitioner filed another PCRA petition (PCRA III) with the assistance of Attorney

Gelman.[14] Judge Lewis issued an order dismissing each of Petitioner's PCRA

claims that had been filed since the remand from the Superior Court.[15] Judge Lewis

also granted Attorney Gelman's request to withdraw due to conflicts of interest and

strained relations with Saterstad.[16]

On a second appeal to the Superior Court of Pennsylvania, Petitioner requested

the appointment of new counsel; that request was denied.[17] Petitioner failed to file

---

[10] Id.
[11] Id.
[12] Id., *See also Edward H. SATERSTAD, Plaintiff/Appellant, v. Norris E. GELMAN, Defendant/Appellee, 2014* WL 4179170
[13] Id.
[14] Id.
[15] Id. at 33
[16] Id.
[17] Id.

a timely brief, and his appeal was dismissed.[18] Petitioner's subsequent petitions for allowance of appeal and reargument/reconsideration were denied by the Supreme Court of Pennsylvania on February 4, 2013 and March 12, 2013, respectively.[19]

On April 4, 2013, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 with this Court. On November 25, 2015, Magistrate Judge Susan H. Schwab, to whom the petition is jointly assigned, issued a report and recommendation recommending that the petition be denied. Petitioner filed timely objections to the report and recommendation, which are now ripe for disposition.

## II.   DISCUSSION

Upon designation, a magistrate judge may "conduct hearings, including evidentiary hearings, and … submit to a judge of the court proposed findings of fact and recommendations."[20] Once filed, this Report and Recommendation is disseminated to the parties in the case who then have the opportunity to file written objections.[21] When objections are timely filed, the district court must conduct a de novo review of those portions of the report to which objections are made.[22]. Although the standard of review for objections is de novo, the extent of review lies

---

[18] Id.
[19] Id. at 34
[20] 28 U.S.C. 636(b)(1)(B)
[21] 28 U.S.C. 636(b)(1)
[22] 28 U.S.C. 636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011)

within the discretion of the district court, and the court may otherwise rely on the recommendations of the magistrate judge to the extent it deems proper.[23]

For portions of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."[24] Regardless of whether timely objections are made by a party, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.[25]

I have reviewed those portions of the report to which no objections were made, and am satisfied that the report and recommendation has no clear error in its face. I have also conducted a de novo review of those portions of the report to which an objection was made, and have concluded that the report and recommendation of the magistrate judge will be adopted in full. The Clerk will be directed to enter judgment in favor of the Respondents and against the Petitioner and close the case file.

---

[23] *Rieder v. Apfel,* 115 F. Supp.2d 496, 499 (M.D.Pa. 2000) (citing *United States v. Raddatz,* 447 U.S. 667, 676 (1980)

[24] Fed.R.Civ.P. 72(b), advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa.2010)(*citing Henderson v. Carlson,* 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every report and recommendation)

[25] 28 U.S.C. § 636(b)(1); Local Rule 72.31

The Petitioner's objections to the Report and Recommendation are discussed below.

## A. PROCEDURAL DEFAULT

The Superior Court of Pennsylvania dismissed Petitioner's appeal for failure to file a brief. Petitioner declined to raise a claim addressing this issue on direct appeal, and therefore the claim is procedurally defaulted. Generally, when a claim is procedurally defaulted, a federal court may not grant *habeas corpus* relief for the claim. However, federal review is not barred by procedural default if the procedural rule upon which the state court relied is neither both "independent" nor "adequate."

To be independent, the operation of the state procedural rule must not require the application of federal constitutional law. Petitioner does not contest that the dismissal of his Superior Court appeal was premised upon an independent state rule. Petitioner asserts, however, that the state rule relied upon was not adequate on the basis that "[a] review of Pennsylvania appellate procedure does not reveal any rule requiring dismissal of an appeal for failure to file a brief."[26] This Court adopts Magistrate Judge Schwab's reasoning on this matter in full and concludes that Pennsylvania Rules of Appellate Procedure 2101 and 2188 are "firmly established and regularly followed state rules" which explicitly state that failure to file a brief

---

[26] Petitioner's brief p. 47

may result in a dismissal of the claim. The Supreme Court of Pennsylvania has acknowledged that there is an administrative practice by the Superior Court of Pennsylvania to "dismiss[] appeals if the appellant's brief has not been filed after a substantial delay."[27]

That said, Petitioner asserts that even if his claim is procedurally defaulted, it is not barred from federal *habeas* review. An established exception to procedural default doctrine provides that defaulted claims may be reviewed if the Petitioner can demonstrate cause for the default and actual prejudice. Petitioner asserts that he has established cause by demonstrating that his rights under Pennsylvania Criminal Procedural Rule 904(c) and (F)(2) have been violated.

However, after counsel withdrew from the initial PCRA filings, Petitioner appealed and the Superior Court concluded that counsel should have been appointed. The Superior Court remanded and provided counsel to Petitioner. Petitioner retained counsel throughout his second round of PCRA filings, after which the PCRA court notified Petitioner of its intention to dismiss his petitions. Petitioner then filed a notice of appeal *pro se* after his PCRA counsel was granted permission to withdraw. Petitioner asserts that this withdrawal violated his right to counsel under Pennsylvania Rule of Criminal Procedure 904 (C) and (F)(2). Rule

---

[27] *Commonwealth v. Robinson*, 837 A.2d 1157, 1162 (Pa. 2003)

904(C) explicitly states, however, that "the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief."

Rule 904 does not require a judge to appoint counsel to a defendant on a second or subsequent petition unless an evidentiary hearing is required as provided in Pennsylvania Criminal Procedural Rule 908. Under the Post Conviction Relief Act, "[a]n indigent offender is entitled to appointed counsel only when an evidentiary hearing is required and the offender satisfies the trial court that the offender is indigent and is unable to otherwise procure counsel. Otherwise, an offender is not entitled to appointed counsel with respect to a second or subsequent PCRA petition."[28] An evidentiary hearing is required under Rule 908 "when the petition for post-conviction relief or the Commonwealth's answer, if any, raises material issues of fact. Petitioner was only entitled to counsel at this point to the extent that he "satisfie[d] the trial court" that he was indigent and unable to otherwise procure counsel. Petitioner does not assert that he was unable to otherwise procure counsel, likely because Petitioner was in fact able to procure counsel when he personally retained Attorney Gelman after concluding that his court-appointed counsel was inadequate.[29]

---

[28] West's Pa. Prac., Law of Probation & Parole § 18:4 (3d ed.)
[29] *See Edward H. SATERSTAD, Plaintiff/Appellant, v. Norris E. GELMAN, Defendant/Appellee.,* 2014 WL 4179170 (Pa.Super.), 7

For the foregoing reasons, Petitioner cannot show cause due to counsel's withdrawal after the PCRA court dismissed Petitioner's second petition.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. Victim's Criminal History

Petitioner also asserts that his trial counsel rendered ineffective assistance when he failed to discover the victim's criminal history. The standard of review for an ineffective assistance of counsel claim is set forth in *Strickland v. Washington*. To prevail on an ineffective assistance of counsel claim, Petitioner must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.[30] To establish deficient performance, Petitioner must prove that "counsel's representation fell below an objective standard of reasonableness."[31] Under this objective standard, there is a "strong presumption that counsel's representation was reasonable."[32] To overcome this presumption, Petitioner must show that Attorney Lock, Petitioner's counsel at trial, "failed to act reasonably considering all the circumstances."[33]

Attorney Lock did not fail to act reasonably "considering all the circumstances" when he did not investigate and discover the victim's criminal

---

[30]*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)
[31] *Id.* at 688
[32] *Id.* at 689
[33] *Id.* at 688

history. As discussed by Magistrate Judge Schwab, the victim was a juvenile at the time of trial, and juvenile records are generally sealed. The victim's record was not, in fact, publicly available until 2007, four years after the trial took place. Despite clearly acknowledging this fact, Petitioner does not assert or suggest any means by which Attorney Lock could have discovered the retail theft conviction. Because Attorney Lock could not access the victim's juvenile records and because there is no other suggested means by which he might have discovered the retail theft conviction, Attorney Lock did not "fail[] to act reasonably considering all the circumstances" and the strong presumption of reasonableness has not been overcome. Petitioner does not therefore meet the first prong of the *Strickland* test. Because Petitioner has not proven that Attorney Lock's performance was deficient, he cannot meet the second prong of the *Strickland* test, which would require him to prove that Attorney Lock's deficient performance was prejudicial to his defense.

The Court will next address Petitioner's assertion that the prosecution violated its due process obligations under *Brady v. Maryland* by failing to disclose the victim's criminal history, and that the PCRA court's ruling on the *Brady* claim is contrary to or an unreasonable application of *Brady*. Magistrate Judge Schwab did not consider the *Brady* claim, finding that the habeas corpus petition framed the claim as an ineffective assistance of counsel claim. This Court agrees with

Magistrate Judge Schwab's conclusion that, if the claim had been framed as a *Brady* claim, it would have been procedurally defaulted.

Further, even if the claim were not procedurally defaulted, disclosure of the victim's retail theft conviction was not required under *Brady*. The *Brady* Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution."[34] Evidence is 'material,' and therefore must be disclosed under *Brady*, "if there is a reasonable probability that, if the evidence had been disclosed, result of the proceeding would have been different."[35]

Petitioner objects that, because the victim's testimony regarding the actual solicitation by Petitioner was not corroborated, the victim's retail theft conviction was an "essential part of his credibility-based defense."[36] However, the jury could consider the fact that no other individual corroborated the events of the solicitation when weighing the evidence. Additionally, although the victim's grandmother, Sharon Edwards, was not present at the time of the solicitation, the victim's account of the solicitation was corroborated by Ms. Edwards' testimony regarding

---

[34] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1197, 10 L. Ed. 2d 215 (1963)

[35] *Wilson v. Beard*, 589 F.3d 651, 665 (3d Cir. 2009)

[36] Petitioners brief p. 45

what the victim disclosed to her about the solicitation. For these reasons, it is not reasonably probable that if the jury had knowledge of the victim's retail conviction, such knowledge would have led them to a different outcome. Therefore, the victim's retail theft conviction was not material for purposes of requiring disclosure under *Brady*.

2.  Victim's School Records

Trial counsel's failure to review the victim's school records also did not constitute ineffective assistance of counsel. Under *Strickland* it cannot be determined that counsel's failure to review the victim's school records constituted a failure to act reasonably considering all of the circumstances. As stated by Magistrate Judge Schwab, the record presents no evidence that the *in camera* review conducted by Judge Lewis to determine whether the school records contained any exculpatory evidence did not, in fact, occur. Magistrate Judge Schwab also noted that the record did not contain any indication that a review of the victim's school records would have led to a finding of exculpatory material. Even if the *in camera* review did not take place, Attorney Lock's failure to investigate the victim's school records does not overcome the strong presumption of reasonableness on the part of trial counsel because there is no indication that the victim's school records would have revealed exculpatory information.

Although Petitioner cites *Williams* for the proposition that counsel has a "duty to investigate" proof that would diminish the victim's credibility, *Williams* is not binding upon this Court and is distinguishable from this case. In *Williams,* trial counsel breached the "duty to investigate" when it failed to "review [] the discovery materials provided by the state."[37]. Unlike the attorney in *Williams*, Attorney Lock did not wholly disregard his duties as counsel by failing to prepare for trial, failing to investigate the facts of his client's case and neglecting to review the discovery materials provided to him. Instead, it is simply not clear whether an evidentiary hearing, not known to likely reveal exculpatory information, occurred. Petitioner also cites *Bond v. Beard* for the proposition that school records are a "trove of information." However, *Bond* refers specifically to the American Bar Association's Guideline for Appointment and Performance of Counsel in Death Penalty Cases, and is not relevant here.[38]

I conclude that Petitioner is not entitled to an evidentiary hearing on this claim because he does not assert any "factual allegations to be proven." The decision to grant an applicant's request for an evidentiary hearing is in the discretion of the district court; this discretion is "not unconstrained."[39] In making this determination, the district court must consider "whether such a hearing could enable an applicant

---

[37] *See Williams v. Washington*, 59 F.3d 673, 680 (7th Cir. 1995)
[38] *See Bond v. Beard*, 539 F.3d 256 (3d Cir. 2008), <u>as amended</u> (Oct. 17, 2008)
[39] *Palmer v. Hendricks*, 592 F.3d 386, 392-93 (3d Cir. 2010)

to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."[40] Here, Petitioner asserts no factual allegations that would entitle him to federal habeas relief and therefore he is not entitled to an evidentiary hearing. Petitioner cites *Barkell v. Crouse*, also not binding on this Court, for its holding that a *habeas corpus* petitioner was "entitled to an evidentiary hearing to determine if counsel was ineffective in failing to investigate a minor victim's school and counseling records."[41] Be that as it may, *Barkell* is distinguishable from Petitioner's case because the petitioner in *Barkell* could point to specific testimony that would have been offered at the evidentiary hearing.[42]

### 3. Impeachment of Victim with Prior Inconsistent Statements

To prevail on an ineffective assistance of counsel claim, Petitioner must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.[43] To prove prejudice under the second prong of *Strickland*, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[40] *Id.*
[41] *Barkell v. Crouse*, 468 F.3d 684, 693 (10th Cir. 2006)

[42] *Id.*
[43] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984)

different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome."[44]

Petitioner cannot show that there is a reasonable probability that the result of

the proceeding would have been different if counsel had impeached the victim with

her prior inconsistent statements regarding the exact number of dates over which

the events occurred. Petitioner asserts in his objections that, because Attorney Lock

failed to impeach the victim with her prior inconsistent statements, the jury was

left with an impression of consistency.

Magistrate Judge Schwab notes that Attorney Lock impeached one statement

by the victim, and that the victim's testimony "showed that she was unclear about

the precise sequence of events." Additionally, Judge Lewis stated that the victim

was "obviously confused as to the exact days and times that the[] numerous

incidents occurred."  For these reasons, Judge Lewis found that Petitioner was not

prejudiced by Attorney Lock's failure to impeach the victim with prior inconsistent

statements.

In reviewing this conclusion, the question this Court must answer is "not

whether a federal court believes the state court's determination under the

*Strickland* standard was incorrect but [instead] whether that determination was

---

[44] *Strickland v. Washington*, 466 U.S. at 694

unreasonable— a substantially higher threshold."[45] I conclude that Judge Lewis's

denial of Petitioner's ineffective-assistance-of-counsel claims was not

unreasonable and was also not contrary to, or an unreasonable application of,

clearly established federal law.

4.  Sequestration of Witnesses

Petitioner asserts that trial counsel, Attorney Lock, was ineffective by failing

to request that the witnesses be sequestered, allowing the victim's friend, Arielle

Moore, to align her testimony with the victim's. Petitioner objects that there is "at

least a reasonable probability that the outcome of the trial would have been

different" if Ms. Moore did not have this opportunity to align her testimony.  Judge

Lewis determined that Petitioner was not prejudiced by Attorney Lock's failure to

sequester the witnesses because the jury was aware of and could take into

consideration the fact that witnesses were not sequestered. Judge Lewis reasoned

that the jury was able to properly weigh Ms. Moore's credibility. This Court agrees

with Judge Schwab's determination that the jury knew that the victim and Ms.

Moore were friends, that Ms. Moore may have attempted to mold her testimony to

that of the victim, and that the jury and was able to weigh this fact in their decision.

The jury saw Ms. Moore appeared confused during her testimony, and at one point

_____

[45] *Knowles v. Mirazyance,* 566 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S.
465, 473 (2007)) (internal quotes omitted)

admit that she had given an answer because she had heard the victim testify to that answer.

The Court concludes that the Petitioner does not meet the second prong of *Strickland* because he cannot show that Attorney Lock's failure to sequester the witnesses created "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[46] Furthermore, under the deferential standard of review, Judge Lewis's finding that Attorney Lock's failure to sequester the witnesses did not constitute ineffective assistance of counsel is not unreasonable.

5. Failure to Call Petitioner's Wife

Petitioner objects that testimony from Saterstad's wife regarding the "red van" would have undermined the victim's credibility, because the victim claimed to have seen him driving the red van at a time when Saterstad's wife claims to have driven the red van to Maryland. Petitioner does not meet the second prong of *Strickland* because he cannot show that Attorney Lock's failure to call Petitioner's wife, Mary Saterstad, created "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[47] Judge Lewis found that Attorney Lock did not provide ineffective assistance when

---

[46] *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984)
[47] *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984)

he failed to call Mary Saterstad as a witness. Judge Schwab interpreted Judge Lewis's reasoning to be that Attorney Lock's trial strategy— showing that Petitioner had a legitimate purpose for being in the area— was reasonable and that Petitioner was not prejudiced by Attorney Lock's failure to call Mary Saterstad.

This Court agrees with Magistrate Judge Schwab's analysis that, even under a *de novo* standard of review, Attorney Lock was not ineffective by failing to call Mary Saterstad. There is not a reasonable probability that if Mary Saterstad had testified at trial, the result of the trial would have been different.

Furthermore, this Court agrees with Judge Lewis's conclusion that credit card receipts showing purchases made in Maryland would have only indicated that purchases were made in Maryland and would not necessarily indicate that the red van was in Maryland. This Court additionally agrees with Magistrate Judge Schwab that, while this evidence would have contradicted the testimony of the victim and Ms. Moore as to when they saw Saterstad in the red van, this would likely only have supported the inference that the girls were mistaken as to dates; the jury was already aware of the fact that the girls seemed confused regarding the exact dates of the incidents. Testimony by Mary Saterstad stating that the red van was in Maryland would therefore not have created a reasonable probability that the result of the proceeding would have been different.

## C. SUFFICIENCY OF THE EVIDENCE

Petitioner claims that the evidence was insufficient for the jury to convict him of attempted kidnapping and stalking under the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Court held that the relevant question under a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[48]

*Jackson* claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."[49] First, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."[50] Second, a federal court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court;" it may only overturn such a state court decision if it was "objectively unreasonable."[51]

---

[48] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (italics in original)

[49] *Coleman v. Johnson*, 132 S. Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012)

[50] *Cavazos v. Smith*, 132 S. St. 2, 4 (2011)

[51] *Coleman v. Johnson*, 132 S. Ct. at 2062 (quoting *Renico v. Lett,* 559 U.S. 766, 773 (2010))

When reviewing a state court sufficiency-of-the-evidence challenge, a federal court must "afford due respect to the role of the jury and the state courts." [52]

1.  Attempted Kidnapping

Judge Lewis's conclusion that the evidence was sufficient to sustain the attempted kidnapping conviction was not an unreasonable application of *Jackson v. Virginia*, because a rational trier of fact could have found Petitioner guilty of the essential elements attempted kidnapping beyond a reasonable doubt. A person is guilty of criminal attempt "when, with intent to commit a specific crime, he does any action which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S. §901. The elements of kidnapping are specifically set forth in 18 Pa.C.S. §2901:

> A person is guilty of kidnapping if he unlawfully removes another person a substantial distance under the circumstances from the place where he is found… with any of the following intentions:
> ….
> (2) To facilitate commission of any felony or flight thereafter.
> (3) To inflict bodily injury on or to terrorize the victim or another.

Judge Lewis concluded that the evidence at trial established that Petitioner approached the victim, a ten year old girl, "and asked her if she wanted $200 to go across the river with him for thirty minutes and 'fool around.'" He determined that this evidence was sufficient to sustain the conviction for attempted kidnapping.

---

[52] *Coleman v. Johnson*, 132 S. Ct. at 2062

Judge Lewis reasoned that the circumstances showed Petitioner's intent to commit the act of kidnapping, and that Petitioner took a substantial step towards unlawfully removing the victim when he asked her to go across the river. This Court adopts Magistrate Judge Schwab's finding that, given the highly deferential standard that must be applied to Judge Lewis's rulings, those findings were not an unreasonable application of *Jackson v. Virginia*.

2.  Stalking

Judge Lewis's conclusion that the evidence was sufficient to sustain the stalking conviction was also not an unreasonable application of *Jackson v. Virginia*. A rational trier of fact could have found Petitioner guilty of the essential elements of stalking which is committed when a person "engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person."[53] Judge Lewis determined that the victim "would obviously be placed in fear and suffer from substantial emotional distress when [Saterstad], an

---

[53] 18 Pa.C.S. §2709.1(a)(2)

adult male, repeatedly followed her around her neighborhood, including driving around her school bus stop and asking her if she wanted to 'fool around.'"[54]

Petitioner contends that the prosecution did not present evidence regarding his specific intent to place the victim in fear of bodily injury or to cause her substantial emotional distress, and that he had a legitimate business-related reason for being in the area. Petitioner argues that "because no evidence was presented with regard to Petitioner's specific intent," Judge Lewis's finding "was an unreasonable determination of the facts in light of the evidence presented." The prosecution was not, however, required to present direct evidence regarding Petitioner's intent to either place the victim in reasonable fear of bodily injury or to cause her substantial emotional distress.

Instead, "[a]bsent circumstances to the contrary, a person intends the natural and probable consequences of his or her act. The law permits the fact finder to infer that one intends the natural and probable consequences of his or her acts, in determining whether the evidence supports a conviction."[55] I agree with Magistrate Judge Schwab's conclusion that "it was within the jury's province to reject Petitioner's testimony regarding the reason for being in the area and conclude that Petitioner's actions would place a child in fear and that he intended the natural

---

[54] Report and Recommendation p. 81
[55] 4 Summ. Pa. Jur. 2d Criminal Law § 5:5 (2d ed.) (internal quotations omitted)

consequences of his actions."[56] Judge Lewis's decision was not contrary to, or an unreasonable application of, *Jackson v. Virginia*.

III.     CONCLUSION

For the reasons delineated above, Magistrate Judge Schwab's Report and Recommendation is ADOPTED and the Petitioner's § 2254 petition for habeas corpus DISMISSED. A Certificate of Appealability shall not issue.

An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[56] Report and Recommendation  p. 81